UNITED STATES DISTRICT COURT  <u>FOR ONLINE PUBLICATION ONLY</u>
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
                                                         :
NAKWAN NELSON                                            :
                                                         :
                    Petitioner,                          :        MEMORANDUM
                                                         :        <u>AND ORDER</u>
                                                         :        11-CV-02183 (JG)
            -against-                                     :
                                                         :
PHILIP D. HEATH,                                         :
                                                         :
                    Respondent.                          :
---------------------------------------------------------x

A P P E A R A N C E S :

        NAKWAN NELSON
                08A1803
                Sing Sing Correctional Facility
                354 Hunter Street
                Ossining, NY 10562
                Petitioner, *Pro Se*

        CHARLES J. HYNES
                Kings County District Attorney
                350 Jay Street at Renaissance Plaza
                Brooklyn, NY 11201
        By:     Terry-Ann Llewellyn
                Attorney for Respondent

JOHN GLEESON, United States District Judge:

        Nakwan Nelson, who is currently incarcerated at Sing Sing Correctional Facility,

brings this petition, *pro se*, for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Following

a jury trial in Kings County Supreme Court, Nelson was found guilty of second degree murder

(felony murder), first degree robbery, second degree criminal possession of a weapon, and

attempted first degree assault.  On March 7, 2008, he was sentenced to an indeterminate prison

term of twenty years to life on the murder conviction and lesser concurrent terms on the

remaining counts.  Nelson now seeks habeas relief from his conviction and sentence.  Nelson

presents four arguments in support of his petition: (1) the court in which he was tried, convicted and sentenced lacked subject matter jurisdiction because Nelson was not named in the body of the indictment in which he was charged; (2) his trial counsel was ineffective for failing to challenge the validity of the indictment; (3) his appellate counsel was ineffective for failing to raise an ineffective assistance of trial counsel claim; and (4) self-incriminating statements made by  Nelson to law enforcement agents were erroneously admitted at trial in violation of Nelson's Fifth Amendment rights.  For the reasons stated below, the petition is denied.

## BACKGROUND

A.      *The Offense Conduct*

The evidence presented at trial established that, on October 6, 2006, Peter Sardis parked and exited his car at Montauk and Stanley Avenues in Brooklyn.  While he was retrieving items from the front passenger seat, Nelson, Robert Austin and Sheron Bullock surrounded Sardis.  Bullock pointed a gun at Sardis's head and demanded money.  Sardis handed over $900 and then heard Khemraj Bonsi calling out for his assailants to leave him alone.   Bullock turned and fired three shots in Bonsi's direction.  One struck and killed Bonsi's coworker, Julio Torres.  Nelson and his accomplices ran up Montauk Avenue.

B.      *Nelson's Statements to Law Enforcement*

On November 2, 2006, Nelson was in custody at the New York Police Department's 81st Precinct in connection with an unrelated matter.  While in custody, Nelson made several statements to police offers and to an assistant district attorney concerning his role in the October 6 incident.  Prior to trial, Nelson moved to suppress his statements.  A suppression hearing was held on January 31, 2008.  The court heard testimony from two witnesses,

Detectives Christopher Obdyke and Edward McDonough, both members of the 75th Precinct Detective Squad who were investigating Torres's death.

1.    *The Suppression Hearing Testimony*

Obdyke testified that Nelson's name had come up in connection with the Torres investigation, so when he learned that Nelson was in custody on November 2, 2006, he went to the 81st Precinct to question him.  At about 4:00 p.m., Obdyke and a homicide detective, John Christopherson, interviewed Nelson for approximately ten to twelve minutes in an interview room at the 81st  Precinct.  Although Nelson had not been informed of his *Miranda* rights, Obdyke asked Nelson if he knew anything about the October 6 incident.  Nelson said that he was walking towards his house when he saw two men, one of whom he knew as "Dollar," robbing someone and heard two gunshots.  Dollar, who was later identified as Austin, subsequently came to Nelson and told him to keep quiet about what he had seen.  After providing this initial statement, Nelson asked Christopherson to leave the room.  When he and Obdyke were alone, Nelson revised his account.  He admitted he was with Austin and his associate during the robbery but said he was standing across the street when it occurred.  At that point, Obdyke ended the interview.  He and Chrisopherson drove Nelson to the 75th Precinct.

Obdyke again interviewed Nelson at the 75th Precinct.  This second interview lasted from about 5:30 p.m. until about 8:00 p.m., although Obdyke took several breaks to complete other work.  Obdyke began the interview by informing Nelson of his *Miranda* rights.  Nelson indicated that he understood each right and agreed to continue the interview begun at the 81st Precinct.  Nelson told Obdyke that that on the morning of October 6, 2006, Austin and his associate, later identified as Bullock, came to Nelson's house and asked if he wanted to rob someone.  Austin and Nelson walked to the corner of Montauk and Stanely Avenues, while

Bullock headed to the same area on a bicycle. When Austin and Nelson arrived at the corner, Austin called Bullock to tell him that the man they were going to rob – Sardis – was nearby. Bullock arrived on his bicycle, and when Sardis got out of his car, Bullock put a gun to his head and told him he was being robbed. Austin went through Sardis's pockets and took his money. Nelson claimed that he was standing across the street during the robbery, acting as a lookout. He said he heard someone shout, "Leave him alone," and then heard two shots. After that, he ran. Later that day, Nelson met with Austin, who had taken $500 from Sardis. Austin told him not to talk about what had happened but did not give him any of the money. After Nelson provided this account, Obdyke asked if he would make a written statement. Nelson said he would, and his handwritten statement was produced at the suppression hearing.

Once Nelson had made his written statement, Obdyke asked if he was willing to speak to someone in the office of the District Attorney ("D.A."). Nelson agreed and was taken to the D.A's office by Sergeant Mark McCormack and Detective Edward McDonough. Obdyke traveled separately. During the trip, McDonough told Nelson that an assistant D.A. would record his statement so he would need to be completely truthful. Nelson asked what would happen if he left something out, and McDonough responded that he had better tell Obdyke before the audiotaped interview. Nelson confessed that Austin had taken $900 from Sardis of which he gave Nelson $300. Obdyke was informed of this new detail at approximately 10:30 or 11:00 p.m., once both parties had arrived at the D.A.'s office. Nelson was then read his Miranda rights for a second time and interviewed by an assistant D.A. in Obdyke's presence. The interview was audiotaped, and the tape was played at the suppression hearing.

Obdyke testified that during the course of these interviews, he never made any promises to Nelson in exchange for his statements or used any physical force against him. He

never threatened Nelson or saw anyone else threaten him. Nelson was offered food and drink and the opportunity to use the restroom throughout the interviews, which lasted from about 4:00 p.m. on November 2 until about 2:00 a.m. on November 3. He refused all offers of food, saying that his stomach was upset, until 2:00 a.m., when Obdyke took him to McDonald's on the way from the D.A.'s office back to the 75th Precinct. According to Obdyke, Nelson never appeared tired, complained of sleepiness, or fell asleep during the course of the interviews.

     2.     *The Hearing Court's Suppression Rulings*

The hearing judge credited the police officers' testimony as "basically" truthful. Based on that testimony, he suppressed the statements made by Nelson at the 81st Precinct prior to his *Miranda* rights waiver but allowed the government to introduce at trial all subsequent statements, including Nelson's oral and written statements at the 75th Precinct, his statements in the car on the way from the 75th Precinct to the D.A.'s office and his statements at the D.A.'s office.

With respect to the statements made in the 75th Precinct prior to Nelson's waiver of his *Miranda* rights, the judge found that Nelson was in custody, and Obdyke knew or should have known that his questions were likely to elicit an incriminating response. Although the statements were voluntary, they were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and they were accordingly suppressed.

On the other hand, the hearing judge admitted all of Nelson's subsequent statements because he found that they were made voluntarily after a knowing, intelligent and voluntary waiver of his *Miranda* rights – or, in the case of the statements made in the D.A.'s office, after two such waivers. The hearing judge based his conclusion on several factual findings. He found that Nelson was not physically mistreated or otherwise pressured into

making his post-*Miranda* statements. He found no evidence of police misconduct, and no indication that the interrogating officers acted pursuant to a policy of inducing defendants to make pre-*Miranda* self-incriminating statements, which they would then be committed to after being informed of their rights. The judge also noted that Nelson provided more, and more self-incriminating, details with each statement he provided, and he expressed no reluctance to discuss the events of October 6, 2006. Furthermore, the breaks between interviews, and in particular the time spent driving between locations, provided Nelson with an opportunity to consider his situation and decide whether to provide further details. And while Obdyke conducted the interviews at both the 81st and 75th precincts, he played a minimal role in the interview at the D.A.'s office and was not present when Nelson spoke to McDonough of his own initiative. Therefore, the hearing judge concluded, both of Nelson's waivers were knowing, intelligent and voluntary, and the statements made after each were not obtained in violation of *Miranda*

C.      *The Direct Appeals*

Nelson appealed his conviction to the Appellate Division, Second Department. He filed a counseled brief and a supplemental *pro se* brief. His appellate counsel, who did not represent Nelson at trial, argued that all of Nelson's post-arrest statements should have been suppressed, as all were tainted by Obdyke's pre-*Miranda* questioning. In his *pro se* brief, Nelson argued that the indictment was jurisdictionally defective because it did not identify Nelson by name in connection with any of the specific charges, and that the trial court therefore lacked jurisdiction.

On May 4, 2010, the Appellate Division affirmed the trial court's judgment. *People v. Nelson*, 899 N.Y.S.2d 659 (2d Dep't 2010). With respect to Nelson's counseled argument, the court held that

the pre-Miranda statement was not so incriminating in nature that it
can be said to have committed the defendant to confessing to the
crime, and there is no evidence that the defendant felt so
committed by the pre-Miranda statement that he believed himself
bound to confess. In any event, the defendant's post-Miranda
statements followed a pronounced break in the interrogation,
which would have attenuated any potential taint from his earlier
statements.

*Id.* at 659-60 (citations omitted). The Appellate Division also held that the argument raised in

Nelson's supplemental *pro se brief* was "unpreserved for appellate review and, in any event,

without merit." *Id.* at 660.

By letter dated June 1, 2010, counsel for Nelson sought leave from the Court of

Appeals to appeal the Appellate Division's May 4, 2010 decision. Leave was denied on August

4, 2010. *People v. Nelson*, 15 N.Y.3d 808 (2010) (Pigott, J.).

D.      *The State Collateral Attacks*

1.      *The § 440 Motion*

Nelson filed a *pro se* motion dated October 1, 2010 in the Kings County Supreme

Court, seeking to vacate his conviction pursuant to N. Y. Crim. P. L. § 440.10. He raised the

same two arguments that were presented to the Appellate Division on direct appeal. He also

argued that his trial counsel had rendered ineffective assistance when he did not move to dismiss

the allegedly defective indictment. The Supreme Court denied Nelson's § 440 petition on

November 24, 2010. (Resp.'s Ex. G, ECF No. 8-3.) It rejected each of Nelson's arguments both

on procedural grounds and on the merits. The court held that the first two issues had already

been determined on the merits by an appellate court, *see* N. Y. Crim. P. L. § 440.10(2)(a) (§

440.10 motion must be denied where "[t]he ground or issue raised upon the motion was

previously determined on the merits upon an appeal from the judgment"), and the third had not

been raised on direct appeal, *see id.* § 440.10(2)(c) (§ 440.10 motion must be denied where issue

was not raised on direct appeal "owing to the defendant's unjustifiable failure . . . to raise such ground or issue upon an appeal actually perfected by him"). It also found no basis for holding the hearing court's *Miranda* determination incorrect and found it "clear that the indictment [was] not defective." The ineffective assistance claim was found meritless, as trial counsel "cannot be said to be ineffective for failing to move to dismiss a valid indictment."

On December 13, 2010, Neslon sought leave from the Appellate Division to appeal the Supreme Court's denial of his § 440 motion. Leave was denied on July 28, 2011. (Resp.'s Ex. I, ECF No. 8-3).

2.    *The Coram Nobis Petition*

On March 8, 2011, Nelson filed a *pro se* motion in the Appellate Division for a writ of error coram nobis. Nelson argued that he was denied the effective assistance of appellate counsel when his appellate counsel failed to claim his trial counsel was ineffective for failing to challenge the indictment. The Appellate Division denied Nelson's application on August 9, 2011 because Nelson "failed to establish that he was denied the ineffective assistance of appellate counsel." *People v. Nelson*, ---N.Y.S.2d ---, 87 A.D.3d 602 (2d Dep't 2011).

E.    *The Present Petition*

Nelson filed his petition for federal habeas relief on May 2, 2011. He advances each of the four arguments raised in his various state appeals. Specifically, he claims that (1) his due process and equal protection rights were violated when he was convicted on the basis of a defective indictment; (2) his trial counsel failed to provide effective assistance when he did not challenge the validity of the indictment; (3) his appellate counsel failed to provide effective assistance when he did not raise an ineffective assistance of trial counsel claim; and (4) Nelson's post-*Miranda* statements to Obdyke, McDonough and the A.D.A. were improperly admitted.

Appended to Nelson's petition was a letter asking the court to "put a hold" on his petition in light of his pending coram nobis appeal. The request for a stay was reiterated in a letter filed on August 29, 2011. Oral argument on the petition and the motion for a stay was held on September 23, 2011. Nelson appeared by video conference.

## DISCUSSION

A.      *The AEDPA Standard*

      1.      *Review of Procedurally Defaulted Claims*

Section 2254(b) of Title 28 of the United States Code prevents a federal court from granting a petition for a writ of habeas corpus unless the petitioner first has exhausted all available state judicial remedies. In order to have exhausted those remedies, a petitioner must have "fairly presented" his federal constitutional claim to the state courts by apprising them of "both the factual and the legal premises of the claim he asserts in federal court." *Daye v. Attorney Gen.*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc). When a claim in a habeas petition has not been exhausted, but there are no remaining procedures available in state court for the petitioner to exhaust his claim, the petitioner will not be required to engage in a futile attempt to exhaust the claim in state court. *See, e.g., Sweet v. Bennett*, 353 F.3d 135, 140 (2d Cir. 2003). In such cases, the federal court is required to treat the claim as procedurally defaulted. *Id.*; *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001).

Furthermore, where there has been actual and explicit reliance upon procedural default to dispose of a claim in state court, there is an "adequate and independent state ground" for the judgment, prohibiting federal habeas review. *Harris v. Reed*, 489 U.S. 233, 261 (1989); *see also Galarza v. Keane*, 252 F.3d 630, 637 (2d Cir. 2001) (state court's reliance must be "unambiguous and clear from the face of the opinion"); *Levine v. Comm'r of Corr. Servs.*, 44

F.3d 121, 126 (2d Cir. 1995); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (noting the state's interests in "channeling the resolution of claims to the most appropriate forum, in finality, and in having the opportunity to correct its own errors"). *But see Lee v. Kemna*, 534 U.S. 362, 381 (2002) (noting the existence of a "small category" of "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question").

   A claim that has been procedurally defaulted in state court generally cannot be reviewed on the merits by a federal habeas court. *Harris*, 489 U.S. at 260-62 (explaining rationale for habeas corpus procedural default rule); *Coleman*, 501 U.S. at 750. However, there are two circumstances in which a federal claim that has been procedurally defaulted – or deemed procedurally defaulted due to the exhaustion requirement – will nonetheless be reviewable on a federal petition for habeas corpus. First, a petitioner is entitled to review of a procedurally defaulted claim if he can show "cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750; *Teague v. Lane*, 489 U.S. 288, 298 (1989). A petitioner may establish cause by showing "that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that some interference by officials . . . made compliance impracticable." *Coleman*, 501 U.S. at 753 (quotation marks omitted) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show prejudice, a petitioner must demonstrate that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (quotation marks omitted).

   Second, even if the petitioner is unable to show cause and prejudice, his procedural default may nonetheless be excused if he or she can show that a fundamental

miscarriage of justice would result from a failure to hear the claim on the merits, *i.e.*, "that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). This ground for excusing procedural default should be applied only in "extraordinary" cases, as courts deem substantial claims of actual innocence "extremely rare." *Schlup*, 513 U.S. at 321-22 (quotation marks omitted).

        2.    *Review of State Court Adjudications on the Merits*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. 28 U.S.C. § 2254(d). Under the AEDPA standard, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.*[1] In addition to the deference owed to state court determinations of fact under § 2254(d), subsection (e) requires that a federal habeas court presume all state court factual determinations to be correct. The petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001). A decision is "contrary to" clearly

---

[1]     This limitation on relief is referred to as "AEDPA deference." *E.g.*, *Jimenez v. Walker*, 458 F.3d 130, 135 & n.2 (2d Cir. 2006).

established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)).

Under the "unreasonable application" standard set forth in *Williams*, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist*, 260 F.3d at 93 (quoting *Williams*, 529 U.S. at 411). Elaborating on this standard, the Supreme Court has held that a habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011); *see also id.* at 786-87 (a state prisoner seeking federal habeas relief "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement"). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 786.

AEDPA's limited scope of review applies whenever a state court disposes of a state prisoner's federal claim on the merits and reduces its disposition to judgment, regardless of whether it gives reasons for its determination or refers to federal law in its decision. *See Richter*, 131 S. Ct. at 785; *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

B.     *The Defective Indictment Claim*

Nelson was charged by Kings County Indictment No. 9440/06. The first page of the indictment contains a caption in which Nelson is identified as the only defendant. The following five pages list five counts accusing "the defendant" of eleven crimes and detailing the allegedly illegal acts committed by "the defendant." Nelson asserts that the indictment "is not a valid and sufficient accusatory instrument and is fatally defective because it does not name defendant, Nakwan Nelson, in the body of the indictment," and that the trial court was therefore without subject matter jurisdiction over the action. Nelson argues that his conviction on the basis of a defective indictment violates his federal due process and equal protection rights.[2] Nelson's first asserted basis for relief is procedurally barred and does not allege a violation of federal law.

1.     *The Procedural Default*

Nelson raised his defective indictment claim in his supplemental *pro se* brief on direct appeal. The Appellate Division rejected the challenge as "unpreserved for appellate review and, in any event, without merit." *Nelson*, 899 N.Y.S.2d at 660. Under New York law, "the proper way in which to challenge the facial validity of an indictment is via pretrial motion to dismiss. When not timely raised, the issue is not reserved for appellate review." *People v. Di Noia*, 481 N.Y.S.2d 738, 739 (2d Dep't 1984). Nelson filed a pretrial motion to dismiss the indictment on the grounds that the evidence presented to the Grand Jury was legally insufficient

---

[2]     Nelson also alleges that the indictment violated various provisions of state law. I disregard these allegations, as a federal district court may issue a writ of habeas corpus to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

and that the prosecutor's instructions to the Grand Jury were improper. He did not argue that the indictment was facially defective.

Nelson argues that a challenge to the facial sufficiency of an indictment constitutes a jurisdictional challenge that cannot be waived by a failure to object by pretrial motion. New York's constitution grants defendants the right to indictment by a grand jury. N. Y. Const. Art. I, § 6. "Infringement of that right constitutes a defect that cannot be waived[.]" *People v. Boston*, 75 N.Y.2d 585 (1990) (quotation marks omitted). However, "not every defect in an indictment is a jurisdictional defect for these purposes. In essence, an indictment is jurisdictionally defective only if it does not effectively charge the defendant with the commission of a particular crime." *People v. Iannone*, 45 N.Y.2d 589, 600 (1978); *see also People v. D'Angelo*, 98 N.Y.2d 733, 734-35 (2002). An objection to the form of an indictment is not jurisdictional and is waived if not timely raised. *See People v. Scott*, 3 N.Y.2d 148, 152 (1957) ("It is well settled that by such a plea he waives his objection to the *form* of the information[.]" (italics in original)); *People v. Brothers*, 411 N.Y.S.2d 714 (3d Dep't 1978) ("[A] failure to timely object to a minor and formal defect in an indictment constitutes a waiver thereof."). Because Nelson's objection was to the form of the indictment, and because it was not made by pretrial motion, the objection was waived under New York law and could not be raised for the first time on appeal.

The Appellate Division explicitly relied on this procedural bar as an independent basis for its disposition of Nelson's defective indictment claim. Nelson has made no showing of cause and prejudice or actual innocence, and this case therefore does not present any of the circumstances in which a federal habeas court may review a procedurally defaulted claim. Accordingly, the claim is not subject to federal habeas review, *see Harris*, 489 U.S. at 263, 264 n.

10; *Galarza*, 252 F3d at 637; *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810 n. 4 (2d Cir. 2000).

### 2. *The Merits*

Even if the claim were subject to my review, it would fail on the merits because it does not allege a violation of federal law. *See* 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."). The Appellate Division held that Nelson's federal constitutional claims were without merit. This holding is subject to AEDPA's stringent standard of review. Habeas relief may be granted only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). The Supreme Court has held that the federal constitution "doe not require the States to observe the Fifth Amendment's provision for presentment or indictment by a Grand Jury." *Alexander v. Louisiana*, 405 U.S. 625, 633 (1972). The Constitution requires only that a defendant be "advise[d] . . . of the nature and cause of the accusation in order that he may meet it and prepare for trial, and after judgment, be able to plead the record and judgment in bar of a further prosecution for the same offense[.]" *Wong Tai v. United States*, 273 U.S. 77, 80-81 (1927). "Challenges to state indictments are only cognizable on habeas review if the indictment fails to satisfy the basic due process requirements: notice of the 'time, place, and essential elements of the crime.'" *Scott v. Superintendent, Mid-Orange Corr. Facility*, No. 03-CV-6383, 2006 WL 3095760, at *6 (E.D.N.Y. Oct. 31, 2006) (quoting *Carroll v. Hoke*, 695 F.Supp. 1435, 1438 (E.D.N.Y. 1988), *aff'd*, 880 F.2d 1318 (2d Cir. 1989)). Nelson, who was the only defendant

mentioned in the caption of the indictment, does not contend that the indictment failed to provide notice of the crimes with which he was charged and their essential elements. Accordingly, the alleged deficiency was not of constitutional dimensions and cannot serve as the basis for federal habeas relief.

C.      *The Ineffective Assistance of Trial Counsel Claim*

Nelson next claims that he was deprived of the effective assistance of trial counsel, because his trial counsel failed to challenge the facial sufficiency of the indictment. This claim is also procedurally barred and without merit.

1.      *The Procedural Default*

Nelson did not raise his ineffective assistance of trial counsel claim on direct appeal. He did raise it in his § 440 motion, where it was denied on both procedural and substantive grounds. Pursuant to N.Y. Crim. P. L. § 440.10(2)(c), a court considering a § 440 motion to vacate a judgment must deny the motion when the issue presented was not subject to direct appellate review "owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him[.]" Nelson's failure to raise the ineffective assistance of trial counsel claim on direct appeal constitutes a procedural default under state law. *See Arce v. Smith*, 889 F.2d 1271, 1272-73 (2d Cir. 1989). Nelson has not made a showing of cause and prejudice or of actual innocence, and the defaulted claim is therefore not subject to federal habeas review. *See id.* at 1274.

2.      *The Merits*

In any event, the claim is without merit. The substantive standard for evaluating a claim of ineffective assistance of counsel is set forth in *Strickland v. Washington*:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. 668, 687 (1984). Thus, to make out an ineffective assistance claim, Nelson must demonstrate both (1) that his attorney's performance "fell below an objective standard of reasonableness," *id*. at 688, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. The state court found that Nelson had not made the requisite showings, and its determination did not constitute an unreasonable application of the *Strickland* standard.

Nelson asserts that his trial attorney should have moved to dismiss the indictment as defective on the grounds that Nelson's name appeared only in its caption and not in its body. Such a motion would have been meritless. As discussed above, the New York Constitution guarantees the right to indictment by a grand jury, but "[t]his does not mean . . . that any particular form of indictment is constitutionally mandated." *Iannone*, 45 N.Y.2d at 593-94. New York statutory law requires that an indictment "accuse[] the defendant or defendants of a designated offense," but not that it use the defendant's name each time he is referred to. N. Y. Crim. P. L. § 200.50(4). "[T]he basic essential function of an indictment qua document is simply to notify the defendant of the crime of which he stands indicted," *id*. at 599, and the challenged indictment achieved that purpose. Nelson was clearly identified as the only defendant in the indictment's caption, and the words "the defendant" in each charge therefore served to apprise him that he was the individual accused. *See People v. Bennett*, 37 N.Y. 117 (1867) ("[T]he form

of this indictment should be considered good, if the omissions complained of, are, in common understanding, implied in that which is expressed."). Nelson was not prejudiced by use of "the defendant" in place of his name, and the alleged defect therefore does not invalidate the indictment under New York law. *See id.*, 37 N.Y. 117 ("[N]o indictment should be deemed invalid . . . by reason of any . . . defect or imperfection in matter of form which shall not tend to the prejudice of the defendant.").[3]

"Failure to make a meritless argument does not amount to ineffective assistance." *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999). Furthermore, even if the argument had merit, Nelson was not prejudiced by his attorney's failure to raise it. Under N.Y. Crim. P. L. § 200.10.25(1), "an indictment may not be dismissed as defective, but must instead be amended where the defect or irregularity is of a kind that may be cured by amendment[.]" Such curable defects include "errors . . . relating to matters of form, time, place, names of persons and the like," which do not affect the theories of prosecution or otherwise prejudice the defendant. *Id*. § 200.70(1). Had Nelson's trial counsel objected to the form of the indictment, and had the trial court sustained his objection, the indictment would not have been dismissed, but only amended

---

[3]    This was also the conclusion reached by each of the state courts that considered Nelson's argument, and it is in accord with New York precedent. *See, e.g., Brothers*, 411 N.Y.S.2d at 715 (indictment that did not mention defendant's name or gender in its body showed "an obvious lack of care in the preparation [but] fulfill[ed] its statutory purpose in identifying the defendant and the charges she must answer"); *People ex rel. Lewis v. Graham*, 870 N.Y.S.2d 665, 666 (4th Dep't 2008) (where indictment's caption identified petitioner as sole defendant, "the reference to 'DEFENDANT' in the body of the indictment was sufficient to charge petitioner with the commission of the crimes"); *see also Bonton v. Ercole*, No. 08-CV526 (ARR), 2008 WL 5049955, at *4 (E.D.N.Y. 2008) ("Clearly . . . the 'defendant' referred to in each of the twenty-nine counts was the sole defendant named in the caption," and defendant's defective indictment claim was therefore without merit (citing *People v. Toro*, 558 N.Y.S.2d 787 (Sup. Ct. 1990)).

Despite this case law, Nelson argues that the caption should not be considered part of the indictment, and once the caption is removed, "the defendant" referred to in the body could be anyone. Nelson relies on *People v. Bennet*, 37 N.Y. 117, but the case does not support his argument. *Bennet*, which was decided in 1867, stands for the proposition that traditions bearing on the "purely technical" aspects of an indictment may become obsolete over time, and deviations from customary forms do not impinge on the rights of defendants as long as they cause no substantive prejudice. *Id.* When describing a particular form of indictment, now antiquated, the *Bennet* court stated that "[t]he caption is no part of the indictment." *Id*. But that description is not apt in this case, where, according to modern custom, the caption of Indictment No. 9440/06 was a part of the indictment, and its content can be read to elucidate that of the indictment's body. *See People ex. rel Lewis*, 879 N.Y.S.2d at 666; *Bonton*, 2008 WL 5049955, at *4.

to include Nelson's name in each count.  Therefore, even if Nelson could show that his attorney's performance was unreasonable, he could not show that he was prejudiced as a result.

D.      *The Ineffective Assistance of Appellate Counsel Claim*

Nelson's third claim for habeas relief is also premised on the alleged defect in the indictment.  According to Nelson, his appellate counsel failed to render effective assistance because he did not raise the ineffective assistance of trial counsel claim Nelson later advanced in his § 440 and federal habeas petitions.  Nelson raised his ineffective assistance of appellate counsel claim before the Appellate Division in his coram nobis petition.  The claim was denied, and Nelson has not yet exhausted his right to appeal the denial.  Federal habeas relief from a state court conviction generally may not be granted unless the petitioner "has exhausted the remedies available in the courts of the State."  28 U.S.C. 2254(b)(1)(A).  With this issue still pending in the state courts, Nelson presents a "mixed petition" for habeas relief, which contains both exhausted an unexhausted claims.  Dismissal of the petition to allow Nelson to pursue his unexhausted claims would likely leave Nelson insufficient time under AEDPA's one-year statute of limitations to refile his petition once his unexhausted claims have been exhausted.  *See Zarvela v. Artuz*, 254 F.3d 374, 379 (2d Cir. 2001).  To ameliorate this risk where a petitioner shows good cause for his failure to exhaust, the Second Circuit developed a stay-and-abeyance procedure in *Zarvela v. Artuz*, 254 F.3d 374, which was endorsed, with some modifications, by the Supreme Court in *Rhines v. Weber*, 544 U.S. 269 (2005).  Under this procedure, a district court may stay consideration of exhausted claims and hold the petition in abeyance while the petitioner exhausts the unexhausted claims in state court.

Nelson has moved for such a stay.  The stay-and-abeyance procedure, however, is only available in limited circumstances, and Nelson's case does not qualify.  The Supreme Court

has noted that there is little point in delaying the resolution of a habeas petition if unexhausted claims have no prospect of success once they are exhausted. *Rhines*, 544 U.S. at 277. Under 28 U.S.C. § 2254(b)(2), "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." A district court should not grant a stay where a petitioner's unexhausted claims are "plainly meritless" and dismissal under 28 U.S.C. § 2254(b)(2) is appropriate. *Rhines*, 544 U.S. at 277 ("[T]he district court would abuse its discretion if it were to grant [a petitioner] a stay when his unexhausted claims are plainly meritless.") Nelson's ineffective assistance of appellate counsel claim is plainly without merit. As discussed above, Nelson's trial counsel was not ineffective. By failing to argue that he was, Nelson's appellate counsel did not himself render ineffective service.

E.     *The* Miranda *Claim*

        In his final claim, Nelson argues that the state hearing court erroneously refused to suppress statements he made to Obdyke, McDonough and the A.D.A. after he was advised of his *Miranda* rights. Nelson presented this argument to the hearing judge before trial and again on appeal to the Appellate Division. In both courts, it was rejected. Habeas relief is appropriate only if the state court rulings were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Nelson's claim does not satisfy either of these standards.[4]

---

[4]        Pursuant to 28 U.S.C. § 2254(e)(1), I must also presume all state court factual determinations to be correct, and place the burden on Nelson to rebut this presumption by clear and convincing evidence. The Supreme Court has not yet spoken on the precise relationship between the standards set out in § 2254(d)(2) and § 2254(e)(1) for evaluating state court determinations of fact. *See Wood v. Allen*, 130 S.Ct. 841, 848-49 (2010). Specifically, the

"The Supreme Court has twice addressed the admissibility of a confession obtained after a *Miranda* warning but preceeded [sic] by the suspect's earlier, unwarned incriminating statements."  *United States v. Carter*, 489 F.3d 528 (2d Cir. 2007) (citing *Oregon v. Elstad*, 470 U.S. 298 (1985); *Missouri v. Seibert*, 542 U.S. 600 (2004)).  In *Oregon v. Elstad* the Court held that a defendant's post-*Miranda* statements are not rendered inadmissible just because the defendant was previously questioned in violation of *Miranda*.  *Elstad*, 470 U.S. at 318 ("[A] suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings.").  Under *Elstad*, if the defendant's pre-*Miranda* statements were voluntary, "the finder of fact must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his statements."  *Id*. at 318.  The post-*Miranda* statements should be suppressed only if the defendant shows that they were involuntarily made despite the *Miranda* warnings.  *Carter*, 489 F.3d at 534.  In *Missouri v. Seibert*, the Supreme Court "carved out an exception to *Elstad* for cases in which a deliberate, two-step strategy was used by law enforcement to obtain the postwarning confession."  *Id*. at 535.  In such cases, the Court held, a police strategy of questioning a suspect until he confesses and then reading him his *Miranda* rights can render the warnings ineffective.  *Seibert*, 542 U.S. at 611.  To determine whether the *Miranda* warnings given to the defendant in *Seibert* had been eviscerated due to a deliberate question-first strategy, the Court considered the following factors: "the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of

---

Court has not determined "whether the arguably more deferential standard set out in § 2254(e)(1) applies in every case presenting a challenge under § 2254(d)(2)."  *Id.* at 849.  However, because I conclude that the state court's relevant factual findings were not unreasonable, and because Nelson has not presented clear and convincing evidence to rebut a presumption of correctness, I would reject Nelson's challenge under either standard of review.

police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first." *Id*. at 615.

Nelson argues that the pre- and post-*Miranda* questioning were part of a single, ongoing interrogation, with only a short break between the sessions, and no change in personnel. I agree with Nelson that certain aspects of Obdyke's approach suggest deliberate deployment of a question-first strategy meant to undermine the effect of the *Miranda* warnings that were eventually delivered. However, the evidence on the record by no means supports a finding that the state courts' determination to the contrary was unreasonable. The Appellate Division held that Nelson's "pre-Miranda statement was not so incriminating in nature that it can be said to have committed the defendant to confessing to the crime[.]" *Nelson*, 899 N.Y.S.2d at 659. This conclusion is reasonable in light of testimony that the pre-*Miranda* questioning lasted for less than fifteen minutes and elicited only an admission that Nelson had been with Austin and Bullock when they committed the robbery. The admissions that Nelson made after he had waived his *Miranda* rights were far more extensive and incriminating. The evidence at the suppression hearing did not indicate that the pre-*Miranda* questioning was "systematic, exhaustive, and managed with psychological skill," *Seibert*, 542 U.S. at 616. The Appellate Division also found that the hour-long period between questionings, accompanied by a change in location, constituted "a pronounced break in interrogation" sufficient to "attenuate[] any potential taint from his earlier statements." *Nelson*, 899 N.Y.S.2d at 659. At best for Nelson, "'fair minded jurists could disagree' on the correctness of the state court's decision," and that is an insufficient basis for federal habeas relief. *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 662 (2004)).

CONCLUSION

For the reasons stated above, the petition is denied. As Nelson has failed to make a substantial showing that he was denied a constitutional right, no certificate of appealability shall issue.

So ordered.

John Gleeson, U.S.D.J.

Dated: October 3, 2011
Brooklyn, New York